

**ORDERED in the Southern District of Florida on August 28, 2012.**

*A. Jay Cristol*

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**
Miami Division
www.flsb.uscourts.gov

In re:

**MUTUAL BENEFITS OFFSHORE
FUND, LTD.**

    Alleged Debtor.     /

Case No. 11-17051-BKC-AJC
Chapter 11 (Involuntary)

**MEMORANDUM OPINION DENYING
MOTION FOR SUMMARY JUDGMENT (DE 354)**

THIS CAUSE came before the Court on June 6, 2012, upon the Redmond Alleged Debtors,[1] Motion for Summary Judgment (the "Motion") (DE 354). The Redmond Group has moved for summary judgment, seeking a determination that Mutual Benefits Offshore Fund, Ltd. ("MBOF") is owned by 24 investors and that the Test Trust is the ultimate owner of MBOF's largest investor, Kayley Investments NV ("Kayley"). As set forth herein, the Court believes it is

---

[1] In these proceedings the group represented by Patricia Redmond, Esq., Joseph Rebak, Esq., and Martin Russo, Esq. has been referred to as "the Redmond Alleged Debtors" or "the Redmond Group"; and the group represented by Emanuel Zeltser, Esq. and Darin DiBello, Esq. has been referred to as "the Zeltser Alleged Debtors" or "the Zeltser Group."

appropriate to deny the Motion because genuine issues of material fact exist precluding summary judgment.

As the Court previously noted at the November 21, 2011 pre-trial conference "there are substantial disputes on multiple issues" in this case, that are of such nature that "*it would [not] be practical to resolve all of those issues in a single trial* that can go on forever." See Transcript of November 21, 2011 Hearing. [Bankr. 17047, DE 403]; [Bankr. 17061, DE 336]. (Emphasis added). The Court then held:

> I believe that we need to have one -- several trials and either bifurcate or trifurcate or multi-furcate the various issues and try them discretely, and then -- working up towards a final trial, but I'm not sure exactly how to put this together at this time, or, in fact, having only been through the examiner's report a couple of times, I'm not ready to determine how to chop this thing up, but I think that it would be rather cumbersome to try and deal with all these disputed issues in one trial.

Since the time of the above-referenced ruling, the Court believes not much has changed.

### I. SUMMARY JUDGMENT IS INAPPROPRIATE WHERE THERE ARE GENUINE ISSUES OF DISPUTED MATERIAL FACTS

Summary judgment should be rendered only, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The requirement is that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id*. The court must not, "resolve factual disputes by weighing conflicting evidence…since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980); *see also Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986).

Here, the Zeltser Group, relying on record evidence and testimony of multiple non-party witnesses challenges the Redmond Group's claim that the Test Trust is the ultimate owner of MBOF's largest investor, Kayley. Specifically, the Zeltser Group cites to the following testimony of several witnesses it believes can provide essential facts with respect to ownership.

**Gennady Sinski.** Mr. Sinski testified that MBOF was created in the British Virgin Islands in June 2002 by principals of the now defunct Mutual Benefits Corp. ("MBC"), a Ft. Lauderdale-based viatical settlement provider. *See* Declaration of Gennady Sinski dated June 14, 2011 ("June 14, 2011 Sinski Decl."), at ¶13. Mr. Sinski further testified that the former principals of MBC, including its president Peter Lombardi and his partner, former MBC vice president Steven Steiner, courted him and Badri Patarkatsishvili ("Badri") and his partner Joseph Kay ("Kay") (collectively "the Investors") for months soliciting their investment in MBC by promising large rates of return in a very short time period. *Id.* at ¶14. To further induce the Investors to make a substantial investment in MBC, Lombardi and Steiner offered to create an offshore company with a name resembling Mutual Benefits Corporation, namely Mutual Benefits Offshore Fund to accommodate their investment and save on taxes in the U.S. and Europe – and to enable them to garner additional investments from their wealthy friends and colleagues in exchange for handsome commissions. *Id.* at ¶15. Mr. Sinski further testified that the Investors invested $15 million in MBC in March 2003 through their investment company Kayley. *Id.* at ¶16 and Exhibit GS-6 to the June 14, 2011 Sinski Decl.; *see also* Declaration of Gennady Sinski dated November 7, 2011 ("November 7, 2011 Sinski Decl.") at ¶¶4-7.

**Oxana Adler.** Ms. Adler testified that she was counsel for Kayley, the Test Trust, and MBOF, further testified that Kay and Badri were always the sole true principals and beneficial owners of Kayley. *See* Declaration of Oxana Adler, LLM dated March 8, 2012 ("Adler Decl.") at

¶9 and Kayley's Articles of Association (pp. 8-15 of the Appendix to Adler Decl.). In addition, Kay held a power of attorney from Badri empowering him to act as the "plenipotentiary" of Kayley in every respect. Adler Decl. at ¶9 and General Power of Attorney (pp. 23-25 of the Appendix to Adler Decl.).

**Nina Zajic.** Ms. Zajic testified that, in late 2002/early 2003, she met with former MBC vice president Steven Steiner in New York to discuss a business proposition that he had for Badri and Kay. *See* Deposition of Nina Zajic taken on March 29, 2010, pursuant to the Redmond Group's subpoena ("Zajic Depo.") at pp. 23-24. According to Ms. Zajic, she attended the meeting at the request of Badri and Kay, *id.* at pp. 24-26, and that Mr. Steiner explained to her that MBOF and Kayley had been formed for Badri and Kay as an investment vehicle for them to invest monies in the fund. *Id*. at pp. 26-28, 31-34, 95-96. According to Ms. Zajic, Mr. Steiner also explained that he had his own team in place to administer MBOF, that his team was there to act for Badri and Kay, and that Badri and Kay could remove/change the team at any time. *Id*. at pp. 32, 95. Ms. Zajic testified that, after the meeting, she briefed both Badri and Kay about her meeting with Mr. Steiner, *id*. at pp. 35, 38-39, 41, and that Badri and Kay subsequently invested monies in MBOF. *Id*. at pp. 32-33.

**Mark Zeltser.** Mr. M. Zeltser testified that, in January 2009, he met with Christopher Samuelson in New York at Mr. Samuelson's request. *See* Deposition of Mark Zeltser taken on July 20, 2010, pursuant to the Redmond Group's notice ("MZ Depo.") at p. 64. During that meeting, Mr. Samuelson admitted that MBOF was created in 2003 by him and Steve Steiner to accommodate Badri's and Kay's $15 million investment. *Id*. at pp. 64-65. Mr. Samuelson also admitted that he had persuaded Badri and Kay to make the investment, that MBOF belonged to Badri and Kay, and that MBOF was an investment in MBC by Badri and Kay. *Id*. at pp. 65-66,

71.

The Zeltser Group also relies on documents of record to further corroborate the above-referenced testimony; in particular, the Resolution of the First Organizational Meeting of the Shareholders of MBOF, dated August 20, 2002, and a letter to Badri and Kay from Peter Lombardi, one of the former principals of MBC, dated March 7, 2003, thanking them for their investment in MBC. The Zeltser Group suggests that this letter indicates MBOF had been founded for them, and they could replace people to manage their investment at any time. *See* p. 36 of the Appendix to Adler Decl. There is also a proxy, dated March 3, 2003, executed by Mr. Lombardi, s*ee* p. 36 of the Appendix to Adler Decl., and a Trustee Deed, dated December 20, 2006 (p. 42 of the Appendix to Adler Decl.); Irrevocable Trust Agreement, dated December 20, 2006 (p. 42 of the Appendix to Adler Decl.); and Resolution of the Shareholders of Kayley and MBOF (pp. 6-7 of the Appendix to Adler Decl.). The Zeltser Group contends that on or about December 20, 2006, all of the assets and stock of Kayley were conveyed to Imedinvest Trust ("Imedinvest").

The Redmond Group contends that this transfer of assets and stock of Kayley to Imedinvest was not effective because Mr. Samuelson, as the purported trustee of the Test Trust, did not approve and sign either of the transfer documents; and also contends that this transfer was not effective because a transfer of assets of the trust could not be done without the written consent of the "protector" of the trust, who the Redmond Group claims is "Vasily Anisimov".

However, the Zeltser Group argues that Mr. Samuleson held the title "trustee" of the Test Trust purely in a nominal capacity, and performed solely ministerial functions at the direct orders of Badri and Kay, and had no authority whatsoever with respect to Test Trust or its assets. *See, e.g.*, Adler Decl. at ¶4. The Zeltser Group refers to correspondence and written instructions,

wherein Badri and Kay referred to Mr. Samuelson as "nominee" and ultimately terminated his nominal capacity. *See* p. 156 of the Appendix to Adler Decl. In addition, the power of attorney executed by Badri, the Principal of Test Trust, appears it may have granted Kay full power to transfer the assets and stock of Kayley. *See* General Power of Attorney (pp. 23-25 of the Appendix to Adler Decl.); *see also* Resolution of Kayley (pp. 44-45 of the Appendix to Adler Decl.).

When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The foregoing record evidence, with all reasonable inferences drawn in favor of the Zeltser Group, reveals that there are sharply disputed issues of material facts precluding the entry of summary judgment on the issue of the ownership of MBOF.

## II.  THE SUMMARY JUDGMENT RECORD

The Redmond Group argues that the evidence and testimony of Alexander Fishkin, Gennady Sinski, and Xenia Petropavlovskaya should not be considered in opposition to the motion for summary judgment, because those individuals have not appeared for their depositions and therefore are precluded from presenting any evidence in opposition to the motion for summary judgment pursuant to the Court's September 27, 2011 Order (DE 197). The Court disagrees. Although the Court has precluded testimony at trial from witnesses who have not appeared at their duly noticed depositions, the subject court order did not address dispositive motions. Moreover, attacks on the creditability of such evidence is inappropriate in a summary judgment proceeding.

The Redmond Group further asserts that that the declaration of Oxana Adler must be disregarded because, as they contend, she lacked personal first-hand knowledge of the ownership

of MBOF. The Court cannot weigh the credibility of the evidence on summary judgment. In considering a motion for summary judgment, a reviewing court must consider the proffered evidence.

The Redmond Group also contends that certain summary judgment evidence offered in opposition may not be considered by the Court based upon said evidence being inadmissible as hearsay, or because the documents have not been authenticated. However, even if such evidence were inadmissible at trial (and this Court does not hold that it would be), such material may be considered by this Court in opposition to the motion for summary judgment. *See Church of Scientology Flag Service Organization, Inc. v. City of Clearwater*, 2 F.3d 1514, 1530 (11th Cir. 1993); *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 319, 324, 106 S.Ct. 2548, 2551, 2553, 91 L.Ed.2d 265 (1986) (non-moving party opposing motion for summary judgment with hearsay documents need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment"); *see also Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1015 & n. 1 (11th Cir.1987) ("The claim by [the moving party] that the letter is inadmissible hearsay does not undercut the existence of any material facts the letter may put into question."). A court's consideration of allegedly hearsay materials submitted by a nonmoving party "does not turn on admissibility at trial but on availability for review." *Offshore Aviation*, 831 F.2d at 1015.

The Eleventh Circuit has recognized that inadmissible evidence may be used to oppose summary judgment so long as there is no indication that the facts could not be reduced to admissible evidence at trial. *Walton v. Neptune Technology Group, Inc.*, 2009 WL 3379916, *2 (M.D.Ala. 2009); *see also Burger King Corp. v. Lumbermens Mut. Cas. Co.*, 410 F.Supp.2d 1249, 1255 (S.D.Fla.2005)("[E]ven if some of these documents were not properly authenticated at this time, the Court could still consider them at the summary judgment stage if 'it finds that

those records could be reduced to admissible evidence at trial'.") Here, there is no indication based on the record before the Court that the facts set forth in the materials submitted by the Zeltser Group could not be reduced to admissible evidence at trial.

Based upon the foregoing, the Court finds that there are multiple, genuine issues of material fact which preclude the entry of summary judgment at this time. Accordingly, it is

ORDERED AND ADJUDGED that the Redmond Alleged Debtors, Motion for Summary Judgment (DE 354) is DENIED.

# # #

Submitted by:
Darin A. DiBello, Esq. (FBN 957615)
Email: ddibello@dlclegal.com
DIBELLO, LOPEZ & CASTILLO, P.A.
1550 Madruga Avenue, Suite 504
Coral Gables, Florida 33146
Telephone: (305) 668-8870
Facsimile: (305) 668-8892
*(Attorney DiBello is directed to mail a conformed copy of this Order to all interested parties immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.)*